**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LOIS SMITH,

|                          |                  |                           |
|--------------------------|------------------|---------------------------|
|                          | Plaintiff,       | 5:19-cv-00997 (BKS/ATB)   |

v.

CITY OF SYRACUSE,

|                          |                  |
|--------------------------|------------------|
|                          | Defendant.       |

---

**Appearances:**

*For Plaintiff:*
K. Felicia Pitts-Davis
499 S. Warren Street, Suite 614
Syracuse, New York 13202

*For Defendant:*
Kristine E. Smith
Corporation Counsel of the City of Syracuse
Todd M. Long
Assistant Corporation Counsel
300 City Hall
Syracuse, New York 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Lois Smith brings this action under 42 U.S.C. § 1983 and New York law against

Defendant City of Syracuse ("City"). (Dkt. No. 2). This action arises from Plaintiff's allegations

that she was arrested and her home was searched by members of the Syracuse Police Department

("SPD") without probable cause or a warrant. (*Id.*). Plaintiff brings: (1) an unreasonable search

and seizure claim under the Fourth Amendment and New York State Constitution (First and

Third Claims); (2) an equal protection claim under the Fourteenth Amendment and New York

State Constitution (Second and Fourth Claims); (3) a malicious prosecution claim (Fifth Claim); (4) a false arrest and imprisonment claim (Sixth Claim); (5) a defamation per se, slander per se, slander, and/or libel claim (Seventh Claim); and (6) an intentional infliction of emotional distress ("IIED") claim (Eighth Claim). (*Id.*). Presently before the Court is the City's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 6). The parties have filed responsive papers. (Dkt. Nos. 10, 13). For the reasons that follow, the City's motion is granted.

## II.    FACTS[1]

In 2018,[2] Plaintiff was at a grocery store when the SPD detained Plaintiff and took her into custody. (Dkt. No. 2, ¶ 3). She "was handcuffed at the store, and put into a police vehicle." (*Id.* ¶ 4). SPD Detective Mike Edmonds "then took Plaintiff back to her residence," and another officer drove Plaintiff's car back to her house. (*Id.* ¶ 5). Plaintiff was forced "from the vehicle and into her house." (*Id.* ¶ 6). She "did not give [SPD] permission or consent to any search of her house." (*Id.* ¶ 7). There was no warrant to search or arrest Plaintiff. (*Id.*).

While searching her house, SPD "destroyed [P]laintiff's property by breaking furniture, destroying new televisions, throwing her food from her refrigerator and cupboards, threw food from her kitchen into her basement, [and] dropped flour and sugar on to her floors." (*Id.* ¶ 8). Though Plaintiff did not have any drugs in her house or on her person, "she was arrested for such charges." (*Id.* ¶ 9). "The stress, anxiety, fear, and humiliation caused [Plaintiff] to have a seizure

---

[1] The facts are drawn from the Complaint. (Dkt. No. 2). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[2] The incident date is disputed. The Complaint alleges the arrest occurred on May 20, 2018. (Dkt. No. 2, ¶ 3). However, Plaintiff filed a Notice of Claim related to the incident on April 30, 2018—before the incident allegedly took place according the Complaint. (Dkt. No. 6-2). The Notice of Claim alleges the incident occurred on March 20, 2018. (*Id.*). However, Defendant alleges "upon information and belief" that the events occurred on February 20, 2018. (Dkt. No. 6-4, at 5 n.1). The exact date is not relevant for resolving the instant motion.

which required hospitalization and care." (*Id.* ¶ 10). Plaintiff's arrest "was aired on local news stations" and "she may have appeared in local police 'blotter' publications." (*Id.* ¶ 11). Plaintiff was in custody until she posted bail. (*Id.* ¶ 35).

## III.   STANDARD OF REVIEW

The standard of review for a motion under Rule 12(c) is the same as for a motion under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "For both motions, the Court must accept the allegations contained in the pleadings as true and draw all inferences in the non-movant's favor." *Neopharm Ltd. v. Wyeth-Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 614 (S.D.N.Y. 2016) (citing *Bank of N.Y.*, 607 F.3d at 922). A complaint "must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

## IV.   DISCUSSION

### A.   Section 1983 Claims

Plaintiff brings several claims under 42 U.S.C. § 1983, including: (1) a Fourth Amendment search and seizure claim, (2) a Fourteenth Amendment equal protection claim, (3) a

malicious prosecution claim, and (4) a false arrest and imprisonment claim.[3] (Dkt. No. 2).

Defendant argues that Plaintiff's § 1983 claims should be dismissed because "a municipality

may not be held liable under § 1983 on the basis of *respondeat superior*." (Dkt. No. 6-4, at 11).

Plaintiff contends that the Complaint pleads "that there is a municipal policy that was

pronounced or tacit and reflected in either [the] action or inaction [of the SPD officers]," and

thus *Monell*[4] liability attaches. (Dkt. No. 10, at 10).[5]

        "It is well established that 'under § 1983, local governments are responsible only for

'their own illegal acts.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (quoting

*Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Local governments "are not vicariously liable

under § 1983 for their employees' actions." *Id.* (quoting *Connick*, 563 U.S. at 60); *see also, e.g.*,

*Bd. of Cty Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold

municipalities liable under a theory of *respondeat superior*."); *Alexander v. City of Syracuse*, No.

17-cv-1195, 2018 WL 6591426, at *10, 2018 U.S. Dist. LEXIS 210687, at *25 (N.D.N.Y. Dec.

13, 2018) (explaining that the city of Syracuse is not "on the hook as a named defendant in every

§ 1983 action that involves one or more members of the Syracuse Police Department").

        "To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a

constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City

of New York*, 914 F.3d 727, 756 (2d Cir. 2019). A municipal policy or custom may be established

---

[3] As Defendant notes, Plaintiff does not articulate whether her malicious prosecution and false imprisonment claims arise under state law or § 1983. For the purposes of this motion, the Court will assume that Plaintiff brings these claims under both state law and § 1983.

[4] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

[5] In its reply, Defendant asserts that Plaintiff failed to oppose its arguments regarding a lack of *respondeat superior* for municipalities, and thus the § 1983 claims should be dismissed. (Dkt. No. 13, at 2). However, the Court finds that Plaintiff responded to Defendant's arguments concerning municipality liability in her opposition. (Dkt. No. 10, at 8–11).

where the facts show either: 1) a formal policy, officially promulgated by the municipality, *Monell*, 436 U.S. at 690; 2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati,* 475 U.S. 469, 483–84 (1986); 3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985); or 4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). To prevail on a municipal liability claim a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Outlaw*, 884 F.3d at 373 (quoting *City of Canton*, 489 U.S. at 385).

To establish a claim based upon a widespread practice, a plaintiff must show that the practice is "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

For a claim based on inadequate training, a plaintiff must "identify a specific deficiency" in the training that is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation. *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 465 (S.D.N.Y. 2009) (citing *City of Canton*, 489 U.S. at 391). In order for a specific deficiency to constitute deliberate indifference, Plaintiff must show: "(1) a policymaker knows to a moral certainty that employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation; (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *City of Canton*, 489 U.S. at

390. A similar pattern of misconduct resulting from allegedly inadequate training is also "ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. "Without notice that a course of training is deficient in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Except in very rare cases, a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008); *see also Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). Prior instances of misconduct must be sufficiently similar to the alleged constitutional deprivation so as to have put the defendant on notice that there was "a specific deficiency in the city's training program." *Amnesty v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004). A municipality can only be found to be deliberately indifferent based on a single constitutional violation where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. In other words, the municipality must put their employees in a situation with "an utter lack of an ability to cope with constitutional situations." *Id.* at 67; *see, e.g., Jenkins v. City of New York*, 478 F.3d 76, 95 (2d Cir. 2007) ("The mere fact that Jenkins was falsely arrested, without more, does not show that the City's training program is inadequate. A training program is not inadequate merely because a few of its graduates deviate from what they were taught.").

### 1.    Fourth Amendment Claims

Here, three of Plaintiff's § 1983 claims arise out of alleged violations of the Fourth Amendment: (1) unreasonable search and seizure (First Claim), (2) malicious prosecution (Fifth Claim), and (3) false arrest[6] (Seventh Claim). *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015). Plaintiff alleges, in a barebones manner, that "[t]he policies and conduct of the defendants [sic] violated her rights to be free from unreasonable searches and seizures," and that Plaintiff incurred damage "as a direct and proximate result of the unlawful policies and acts of defendants." (Dkt. No. 2, ¶ 13–14). Similarly, for the malicious prosecution and false arrest claims, the Complaint solely alleges that she suffered damage "as a direct and proximate result of the unlawful policies and acts of the defendants described herein," (*id.* ¶¶ 32, 36), without any specifics regarding the policies.

These allegations are insufficient to establish *Monell* liability. "The complaint is bereft of any detail about the nature of any suspect policies, practices, or procedures, much less how they caused" the violation of Plaintiff's rights. *Moore v. City of Norwalk*, No. 17-cv-695, 2018 WL 4568409, at *4, 2018 U.S. Dist. LEXIS 162782, at *9 (D. Conn. Sept. 24, 2018) (dismissing a complaint when it alleged that the acts of the officers were "carried out . . . pursuant to the customs, policies, usage, practices, procedures, and rules" of the municipal defendant); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (affirming dismissal of complaint where the *Monell* allegations "contained only conclusory and speculative assertions" that the alleged conduct occurred "pursuant to the practice, custom, policy and particular direction of" the policymaker) (quotation marks omitted).

---

[6] Plaintiff styles her sixth claim as one for "False Arrest and False Imprisonment." (Dkt. No. 2, at 5). "Claims brought under Section 1983 are guided by state tort law." *Yanez v. City of New York*, 29 F. Supp. 2d 100, 106 (E.D.N.Y. 1998). "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473 (1972)).

Citing paragraph 18 of the Complaint, Plaintiff contends that it "adequately pled a claim for municipal liability under Section 1983" because it "pled areas of policy failure in training, supervision, and disciplinary actions that make out municipal liability." (Dkt. No. 10, at 10 (citing Dkt. No. 2, ¶ 18)). Paragraph 18 of the Complaint does contain allegations regarding training in a Cause of Action for violation of the Fourteenth Amendment. *See* Dkt. No. 2, ¶ 18 (stating that "[t]he violations of plaintiff's constitutional rights under the Fourteenth Amendments [sic] . . . were directly and proximately caused by the actions and/or inactions of Defendants [sic] City of Syracuse," and then listing several policies). Even assuming that Plaintiff intended for this cause of action to include training with respect to the alleged Fourth Amendment claims,[7] the allegations are insufficient because they are conclusory and provide no facts that would allow a plausible inference of a deliberately indifferent failure to train with respect to any of Plaintiff's Fourth Amendment rights. Thus, the Defendant's motion to dismiss Plaintiff's § 1983 claims arising under the Fourth Amendment is granted.

## 2.  Fourteenth Amendment Equal Protection Claim

Plaintiff's Second Claim alleges that "[t]he policies and intentional conduct of the defendants [sic] in furtherance of denial of the plaintiff's right to be free from illegal search and seizure, unlawful arrest and malicious prosecution to deprive the plaintiff of his [sic] *right to equal protection of the laws* in violation of the Fourteenth Amendment." (Dkt. No. 2, ¶ 17 (emphasis added)). Thus, Plaintiff alleges an equal protection claim arising under the Fourteenth Amendment.

---

[7] The provisions of the Fourth Amendment are incorporated against the states by the Fourteenth Amendment. *Ahlers v. Rabinowitz*, 694 F.3d 53, 61 (2d Cir. 2012).

In regards to her equal protection claim, Plaintiff alleges that her "damages and the conduct of the individual defendants[8] were directly and proximately caused by the actions and/or inactions of [the City] which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and the need for more or different training" in several areas. (Dkt. No. 2, ¶ 18). These areas included, inter alia, (1) "[l]egal cause to stop, detain, arrest, and criminally charge a citizen"; (2) "[t]he proper exercise of police powers"; (3) "[t]he failure of police officers to follow established policies, procedures, directives, and instructions regarding arrest"; and (4) "[t]he practice among Syracuse Police offices of instituting false charges against individuals who the officers have subjected to illegal search and seizure."[9] (*Id.* ¶ 18(a)–(h)).

Defendant contends that these allegations are "light on facts and heavy on conclusory, boilerplate language." (Dkt. No. 6-4, at 15). The Court agrees. For a *Monell* claim, Plaintiff must show she "suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy*, 914 F.3d at 756. Here, the constitutional right at issue is equal protection, which "requires the government to treat similarly situated persons alike." *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012). There are "a number of common methods" of "plead[ing] an equal-protection-based case of action," including: (1) "point[ing] to a law or policy that expressly classifies persons on the basis of race," (2) "identify[ing] a facially

---

[8] The Complaint does not name any individual defendants—the sole defendant is the City. Nevertheless, the Court will construe this statement as applying to the individual officers who allegedly violated Plaintiff's constitutional rights.

[9] In her opposition, Plaintiff attached the Syracuse Citizen Review Board's Annual Report from 2018. (Dkt. No. 10-2). She argues that it "can be gleaned . . . from these reports . . . that there is a dearth of discipline against officers who engage in police misconduct." (Dkt. No. 10, at 10). As Defendant argues, "facts submitted in a plaintiff's memorandum of law in opposition to a motion to dismiss that are not in plaintiff's complaint are not properly considered by the court deciding the same motion." (Dkt. No. 13, at 3–4 (citing *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 304 (S.D.N.Y. 2015))) (emphasis omitted). Thus, the Court declines to consider this attachment. *See Green*, 96 F. Supp. 3d at 304.

neutral law or policy that has been applied in an intentionally discriminatory manner," (3) alleg[ing] that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus," (4) "assert[ing] a 'selective enforcement' claim by showing they were treated differently based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person," and (5) "assert[ing] a so-called 'class of one' claim by alleging that they were intentionally treated differently from others similarly situated and that there was no rational basis for this difference in treatment." *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 597 (N.D.N.Y. 2016) (citations and internal quotation marks omitted). Plaintiff does not specify under which theory her equal protection claim arises. Furthermore, she does not specify how the alleged policies caused a constitutional violation of her right to equal protection. The Complaint "fails to plausibly establish an all-important link in the causal chain leading to *Monell* liability. Among other things, plaintiff has failed to demonstrate how the alleged misconduct by [SPD officers] that took place on this occasion was caused or encouraged by a policy or custom attributable to the municipality itself." *Alexander*, 2018 WL 6591426, at *10, 2018 U.S. Dist. LEXIS 210687, at *26 (dismissing a *Monell* claim pled with the exact same language as paragraph 18 of the Complaint). Accordingly, Plaintiff's Fourteenth Amendment equal protection claim is dismissed.

### B.    Supplemental Jurisdiction

Having dismissed all federal claims, the Court must consider whether to retain supplemental jurisdiction over Plaintiff's state law claims or remand them to state court.[10] *See* 28 U.S.C. § 1367(c)(3); *see also Sekiguchi v. Long*, No. 13-cv-01223, 2013 WL 5357147, at *1,

---

[10] Defendant removed the action under 28 U.S.C. § 1446 to this Court on August 12, 2019 based on federal question jurisdiction under 28 U.S.C. § 1331. (Dkt. No. 1).

2013 U.S. Dist. LEXIS 137351, at *2 (D. Conn. Sep. 25, 2013) ("[T]he court has an obligation to consider its subject matter jurisdiction *sua sponte*.") (citing *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (stating that the Second Circuit and Supreme Court "have held that when the federal claims are dismissed the 'state claims should be dismissed as well'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In deciding whether to exercise supplemental jurisdiction, a district court should balance the traditional "values of judicial economy, convenience, fairness, and comity." *Cohill*, 484 U.S. at 350.

Plaintiff argues "[c]ourts have upheld the exercise of supplemental jurisdiction even when all federal law claims were eliminated prior to trial, for example, in long-pending cases presenting no novel issues of state law where discovery has been completed . . . and the case would soon be ready for trial," (Dkt. No. 10, at 13 (citing *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014)), and the Court should exercise supplemental jurisdiction here. The Court is unpersuaded. "Remand is particularly appropriate here where discovery had not even begun: defendants filed their motion to dismiss shortly after filing their answer." *Torre v. Town of Tioga*, No. 14-cv-01067, 2015 WL 1524421, at *2, 2015 U.S. Dist. LEXIS 43479, at *4 (N.D.N.Y. Apr. 2, 2015); *see also Certilman v. Becker*, 807 F. Supp. 307, 310 (S.D.N.Y.1992) (declining to exercise jurisdiction where "the complaint was amended to omit all federal-law claims *before the parties engaged in any discovery* and before any responsive pleading was filed") (emphasis added)). Given that the federal claims are being dismissed at an

early stage in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### C.      Leave to Amend

Plaintiff requests that she "be given the opportunity to amend her complaint since it was initial[ly] brought in state court, and has been removed." (Dkt. No. 10, at 17). Defendant responds that this request should be denied because "it does not conform [to] the Local Rules" as "plaintiff has failed to formally move to amend or otherwise comply with the many structures of Local Rule 7.1(a)(4)." (Dkt. No. 13, at 10).

The Court agrees. Local Rule 7.1(a)(4) governs motions to amend pleadings, and states that "[a] party moving to amend a pleading . . . must attach an unsigned copy of the proposed amended pleading to its motion papers." Additionally, "[t]he motion must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading." *Id.* Plaintiff's request to amend does not follow Local Rule 7.1(a)(4), and thus the Court denies her request. *See Donato v. Senkowski*, No. 97-cv-0606, 2000 WL 33743377, at *2, 2000 U.S. Dist. LEXIS 21973, at *3–4 (N.D.N.Y. Oct. 31, 2000) (denying a motion to amend for failing to comply with Local Rule 7.1(a)(4)). If Plaintiff still wishes to amend her complaint after this order, she may move to do so in accordance with the pre-motion letter and conference procedure described below and Local Rule 7.1(a)(4).[11] Plaintiff must submit a pre-motion letter with a draft of the amended complaint within 30 days of this Order. Otherwise, the case will be remanded to state court.

### D.      Pre-Motion Letter and Conference

---

[11] To the extent Plaintiff seeks to amend her complaint, the Court encourages her to carefully review this decision, this Court's decision in *Alexander*, 2018 WL 6591426, 2018 U.S. Dist. LEXIS 210687, and Defendant's memorandum of law in support of the motion for judgment on the pleadings (Dkt. No. 6-4) to assess the viability of any claims.

To the extent any party seeks to file a motion to amend, a motion for summary judgment under Fed. R. Civ. P. 56, or a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court orders compliance with the following procedure. The prospective movant shall submit a pre-motion letter not to exceed three pages in length, setting forth the grounds for the anticipated motion and, if it is a motion to amend, a draft of the amended complaint. Any prospective opposing party may then respond with a letter not to exceed three pages, within one week of receiving the pre-motion letter. The responding letter should briefly describe any anticipated arguments in opposition. Upon review, the Court will issue an order scheduling a conference with the parties to discuss the issues raised. The proposed motion shall not be filed until the Court enters an order with respect to the pre-motion letter. This procedure is designed to enable the Court to set an appropriate briefing schedule and to explore whether the motion may be obviated by an amendment to the pleadings or consent to the relief sought.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 6) is **GRANTED** as to Plaintiff's claims arising under the United States Constitution, including her Fourth Amendment claims for unreasonable search, malicious prosecution and false arrest (First, Fifth and Sixth Claims), and her Fourteenth Amendment equal protection claim (Second Claim); and those causes of action are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff's request to amend is **DENIED without prejudice** to renewal. Plaintiff may seek to amend the complaint by filing a pre-motion letter, with a proposed amended complaint, within **THIRTY (30) days** of the date of this Order; and it is further

**ORDERED** that if no pre-motion letter seeking permission to amend the complaint is filed within thirty days, the Clerk is directed to remand the case to the New York Supreme Court,

Onondaga County, under Index Number SU-2019-003850, and mail a certified copy of this order

of remand to the Clerk, New York Supreme Court, Onondaga County; and it is further

      **ORDERED** that if any party seeks to move for judgment on the pleadings or for

summary judgment, they must comply with the pre-motion letter and conference procedure

described above.

      **IT IS SO ORDERED.**

Dated:  April 21, 2020
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge